UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | CASE NO. 5:98-cr-00138 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 108] |
| vs. | : | |
| | : | |
| TIMOTHY WISE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In 1998, a jury convicted Defendant Timothy Wise of six bank-robbery-related charges.  The Court sentenced Wise to a then-mandatory 610-month minimum sentence.

In 2007, other prison inmates attacked Defendant Wise at his prison's recreation yard.  Defendant Wise suffered severe neurological and physical injuries.

Defendant Wise now moves for compassionate release under 18 U.S.C. § 3582.[1] He says the Court should reduce his sentence to time served due to his overlong sentence, deteriorating medical condition, COVID-19 risks, and other reasons.  The Government opposes.[2]

For the following reasons, the Court **GRANTS** Defendant Wise's motion for compassionate release.

---

[1] Doc. 108.
[2] Doc. 110.  Wise replies.  Doc. 111.

Case No. 5:98-cr-00138
Gwin, J.

I.      Background

   A. Offense Conduct

   In July 1997, Defendant Timothy Wise purchased crack cocaine from K.L., a minor.[3]

After this purchase, Wise proposed to K.L. that they could make money by robbing a bank:

> The plan entailed [K.L.] getting in the defendant's [trunk].  The
> defendant, dressed in a suit, would drive [K.L.] to the bank and
> let him out of the trunk.  [K.L.] would then rob the bank and
> return to Wise, who would be waiting for him.  [K.L.] would
> then get back into the trunk and the defendant would drive
> away from the area slowly.[4]

   Wise and K.L. executed some version of this plan three times.  The first attempt

succeeded.[5]  The second attempt failed because K.L. dropped the stolen cash when a dye

pack exploded.[6]  Nevertheless, Wise and K.L. evaded capture.[7]  During the third attempt, a

police officer at the bank arrested K.L.[8]  Wise initially escaped, but K.L. later informed

Federal Bureau of Investigations ("FBI") agents of Wise's involvement.[9]

   B. Wise's Prosecution and Sentencing

   On March 5, 1998, FBI agents arrested Defendant Wise.[10]  The federal indictment

charged Wise with two counts of aiding and abetting bank robbery, one count of aiding

and abetting an attempted bank robbery, and three counts of aiding and abetting the use or

possession of a firearm in furtherance of a crime of violence.[11]

---

[3] Doc. 108-3 ("PSR") ¶ 14.
[4] PSR ¶¶ 14, 16.
[5] PSR ¶ 17.
[6] PSR ¶¶ 19-20.
[7] PSR ¶ 20.
[8] PSR ¶ 22.
[9] PSR ¶ 23.
[10] PSR ¶ 23.
[11] Doc. 108-1.

Case No. 5:98-cr-00138
Gwin, J.

The case went to trial.  The first trial ended in a mistrial.[12]  In the second trial, a jury convicted Defendant Wise of all counts.[13]

The presentence investigation report put Wise's adjusted base offense level at 27 and his criminal history category at I, resulting in a guidelines range of 70 to 87 months.[14] This sentencing guidelines range was mandatory because Wise's sentencing occurred before the Supreme Court decided *United States v. Booker*.[15]  Consecutive to this mandatory guideline range, Wise's firearms counts carried mandatory consecutive sentences, totaling 45 years.[16]

The court sentenced Wise to the mandatory minimum 610 months.[17]

### C. Prison Injury

During Wise's approximately 22-year incarceration, Wise has suffered serious injuries.  In 2007, other inmates beat Wise unconscious.[18]  Wise suffered two spinal fractures, a broken jaw, and a broken nose.[19]  Wise says that prison officials delayed a necessary back surgery for one year, resulting in complications.[20]  Wise continues to have neurological problems, including debilitating headaches and seizures.[21]

## II.    Discussion

Wise moves for compassionate release.[22]  Wise argues that his overlong sentence,

---

[12] Doc. 31.
[13] Doc. 50.
[14] PSR ¶ 118.
[15] 543 U.S. 220 (2005).
[16] PSR ¶ 66.
[17] Doc. 73.
[18] Doc. 108 at 7.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

Case No. 5:98-cr-00138
Gwin, J.

deteriorating medical condition, COVID-19 risks, and other reasons justify a sentence reduction to time served.[23]

The Government opposes.[24]  The Government argues that Wise's medical condition is not deteriorating.[25]  Regarding COVID-19, the Government says that Wise's prison—FCI McDowell—has no confirmed cases and that Wise is not especially vulnerable to the virus.[26]  The Government does not rebut Wise's overlong sentence argument.

### A. Exhaustion

The Court may modify a defendant's term of imprisonment upon a motion from a defendant once 30 days have expired since the warden of the defendant's facility received such a motion from the defendant.[27]

Wise argues that he has satisfied the exhaustion requirement, and the Government does not challenge this contention.  The evidence shows that Wise's facility received his request between a February 21 – 25, 2020 and that the Warden denied his request over 30 days later, on April 6, 2020.[28]

Because more than 30 days have expired since Wise's request, he has satisfied the exhaustion requirement.

### B. Eligibility

To grant compassionate release, the Court must find that "extraordinary and

---

[23] *Id.*
[24] Doc. 110.
[25] *Id.* at 5.
[26] *Id.*
[27] 18 U.S.C. § 3582(c)(1)(A)(i).
[28] Wise says that, on February 20, 2020, Wise's his counsel submitted a compassionate release request via FedEx.  Doc. 108 at 6; Doc. 108-11.  In support, Wise presents a February 21, 2020 FedEx receipt showing that BOP received his compassionate release request.  Doc. 108-10.  The Government's evidence—the Warden's denial of Wise's request—asserts that the Warden received the request on February 25.  Doc. 110-2.

-4-

Case No. 5:98-cr-00138
Gwin, J.

compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[29]  The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553.[30]

The applicable policy statement instructs that extraordinary and compelling reasons for a sentence reduction fall into four categories: (i) medical conditions, (ii) age, (iii) family circumstances, and (iv) other reasons.[31]

Wise's compassionate release motion implicates the (i) medical conditions category and the (iv) other reasons category.  The Court discusses each category in turn.

### 1.  Medical Conditions

The Sentencing Commission's policy statement provides guidance as to which medical conditions constitute extraordinary and compelling reasons warranting a sentence reduction.  Such medical conditions include (i) terminal illnesses and (ii) conditions and impairments that "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[32]

Wise's medical records show that his neurological condition falls within this second category.  His neurological condition diminishes his ability to provide self-care in prison, and the condition has no cure.

Wise argues and the evidence substantiates that Wise's neurological condition is worsening and that the condition diminishes his ability to provide self-care.[33]  Previously,

---

[29] 18 U.S.C. § 3582(a)(1)(A).
[30] *Id.*
[31] USSG § 1B1.13 cmt. n.1.
[32] *Id.*
[33] Doc. 108 at 8; Doc. 110-1.

Case No. 5:98-cr-00138
Gwin, J.

Wise's seizures had been controlled with medication, but over the last 18 months, Wise's

seizures have returned.[34]  As a result, Wise has fallen out of his bunk and broken bones.[35]

Wise contends that he is "on orders to sleep only in a bottom bunk," but, due to an

apparent lack of prison space, Wise says prison officials assigned him to a top bunk.[36]  The

Government does not rebut Wise's allegation regarding his bunk or his fall.

Instead, the Government argues that Wise's neurological condition is not

worsening.  The Government's argument repeatedly misrepresents the record.  For

example, the Government says that Wise's most recent medical record describes his

condition as "unremarkable."[37]  In fact, the record says that Wise's "*L-spine* is

unremarkable," but the record goes on to say that Wise has two fractured ribs.[38]

Next, the Government suggests that Wise's claim that the his seizures have returned

in the last 18 months is false because a medical record says that "Defendant 'denies any

seizure activity since his return.'"[39]  But a full reading of the pertinent medical record

shows that Wise was denying any seizures since his return to the emergency room after an

apparent seizure.[40]  Defendant was not, as the Government suggests, denying any seizures

in the last 18 months.

In short, Wise's worsening neurological condition tends to show an extraordinary

---

[34] Doc. 108 at 8; *see* Doc. 110-1 at 4-5.
[35] Doc. 108 at 8; Doc. 110-1 at 10.
[36] Doc. 108 at 8.
[37] Doc. 110 at 5.
[38] Doc. 110-1 at 1 (emphasis added).
[39] Doc. 110 at 5 (quoting Doc. 110-1 at 4).
[40] Guards transported Wise to the emergency room on December 9, 2020 because they saw him pass out and in an altered mental state.  Doc. 110-1 at 121. The guards suspected a drug overdose, so the doctor conducted a drug screen and evaluation.  *Id.* at 126.  The drug screen was negative.  *Id.* at 126.  The physician prescribed Keppra, an anti-seizure medication and discharged Wise.  *Id.* at 115.  Wise later reported to the doctor that the "prison is not giving him his seizure medication."  *Id.* at 141.

-6-

Case No. 5:98-cr-00138
Gwin, J.

and compelling reason for compassionate release.

### 2. Other Reasons

The Court next considers whether "other reasons" justify Wise's proposed sentence modification.[41] Courts have described the Sentencing Commission's policy statement's "other reasons" category as a "catch-all provision."[42] The "other reasons" category says that a sentence reduction may be appropriate if "an extraordinary and compelling reason other than, or in combination with, the reasons described" in the first three categories exists.[43]

Wise raises two arguments why his compassionate release motion should be granted under this catch-all provision: COVID-19 and his overlong sentence.

Wise's COVID-19 argument is not very persuasive. Wise is not among those particularly vulnerable to the virus, and he does not show that his prison—FCI McDowell—has been especially affected.

Wise's overlong sentence argument, on the other hand, is much more persuasive. Defendant Wise argues that his overlong sentence, and the disparity between him and a hypothetical similarly situated defendant sentenced today, constitutes an extraordinary and compelling reason justifying Wise's sentence modification.[44]

---

[41] USSG § 1B1.13 cmt. n.1 (capitalization altered).

[42] *E.g.*, *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019).

[43] USSG § 1B1.13 cmt. n.1. The policy's "Other Reasons" category is outdated in that it still assumes compassionate release "may by granted only upon motion by the Director of the Bureau of Prisons." *Brown*, 411 F. Supp. 3d at 449 (quoting USSG § 1B1.13 cmt. n.1). Because this is no longer the law with the First Step Act, which allows defendants to seek relief directly from the court, the outdated policy "leaves district courts in a conundrum." *Id.* (describing that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, but the Commission "has not made the policy statements for the old regime applicable to the new one"). This Court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant" compassionate release. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) (quoting *Brown*, 411 F. Supp. 3d at 449) (collecting cases).

[44] Doc. 108 at 9-12.

-7-

Case No. 5:98-cr-00138
Gwin, J.

As explained above, Defendant Wise's 1998 sentencing guideline range was 610 to 627 months, and the court sentenced him to the mandatory minimum 610 months.  Under the law today, Wise would face a guidelines range of 250 to 267 months,[45] subject to some court discretion.

The reason for this disparity is twofold.  First, Wise's 1998 sentencing guidelines range was mandatory because Wise's sentencing occurred before *United States v. Booker*.  In *Booker*, the Supreme Court held that the sentencing guidelines are advisory.[46]

Second, in 1998, Wise's § 924(c) firearms conviction sentences "stacked" and ran consecutively.[47]   At the time of Wise's sentencing, if multiple § 924(c) counts were charged in the same indictment, the first § 924(c) conviction carried a mandatory, five-year consecutive sentence, and each additional § 924(c) conviction added another 20 years.[48] This was because under the original version of the statute, a § 924(c) conviction was considered "second or subsequent"—thus triggering the 20-year penalty—even if the *first* § 924(c) conviction was obtained in that same case.[49]   As Wise suffered three § 924(c) convictions, the sentencing judge was required to tack 45 years onto Wise's sentence.

In the First Step Act of 2018, Congress eliminated 18 U.S.C. § 924(c)'s previous stacking requirement.  The First Step Act clarified that § 924(c) counts can only be stacked if the second offense occurs after a final conviction on the first offense.[50]

---

[45] A hypothetical similarly situated defendant sentenced today would face a mandatory 15-year sentence for counts 2, 4, and 6, and a guidelines range sentence of 70 to 87 months on counts 1, 3, and 5.

[46] 543 U.S. 220, 245 (2005).

[47] *United States v. Decator*, No. CR CCB-95-0202, 2020 WL 1676219, at *4 (D. Md. Apr. 6, 2020).

[48] In 1998, Congress amended § 924(c) to increase the mandatory minimum for a "second or subsequent" § 924(c) conviction from 20 years to 25 years.  *See* Pub. L. 105-386, § 1(a), Nov. 13, 1998, 112 Stat. 3469.

[49] *See Deal v. United States*, 508 U.S. 129, 132–33 & n.1 (1993).

[50] First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22.

Case No. 5:98-cr-00138
Gwin, J.

Multiple district courts have reasoned that the First Step Act's elimination of 18

U.S.C. § 924(c)'s previous stacking requirement constitutes an extraordinary and

compelling reason under 18 U.S.C. § 3582(c)(1)(A).[51]  The Court agrees with this

reasoning.  The fact that Wise, if sentenced today for the same conduct, would likely

receive a dramatically lower sentence than the one he is currently serving, is an

"extraordinary and compelling" reason justifying potential sentence reduction

under § 3582(c)(1)(A)(i).

Defendant Wise has served approximately 22 years—at the top of today's guidelines

range—without any adjustments for goodtime credit.  In view of Wise's offense conduct

and his limited criminal history, a sentence of 610 months is disproportionate to similarly

situated defendants being sentenced today.  Considering this sentencing disparity, Wise's

deteriorating medical condition, and COVID-19 risks, the Court finds extraordinary and

compelling grounds to reduce Wise's sentence.  Granting compassionate release here also

accords with 18 U.S.C. § 3553(a).

---

[51] *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *8 (S.D. Iowa Apr. 29, 2020)
(collecting cases); *see also United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *16 (W.D.N.Y.
Apr. 20, 2020) (holding rehabilitation and changes to § 924(c) stacking constitute extraordinary and
compelling circumstances); *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596, at *5 (W.D.
Wash. Apr. 14, 2020) ("It is extraordinary that a civilized society can allow this to happen to someone who,
by all accounts, has long since learned his lesson."); *United States v. Wade*, No. 2:99-CR-00257-CAS 3, 2020
WL 1864906, at *6 (C.D. Cal. Apr. 13, 2020) ("A number of other district courts . . . have also found that the
drastic reduction in § 924(c) sentences with its elimination of stacking . . . in combination with other
circumstances may warrant a modification of the defendant's sentence." (internal citations and quotation
marks omitted)); *Decator*, No. CR CCB-95-0202, 2020 WL 1676219, (D. Md. Apr. 6, 2020) (finding the
change in sentencings requirements under 18 U.S.C. § 924(c) to be an extraordinary and compelling reason
to reduce Decator's 633-month sentence for several armed bank robberies dating back to the early 1990s);
*United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020)
(considering § 924(c) stacking changes one of several extraordinary and compelling reasons); *United States v.
Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is
warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration
forty years longer than Congress now deems warranted for the crimes committed.").

Case No. 5:98-cr-00138
Gwin, J.

### III.    Conclusion

For the foregoing reasons, the Court **GRANTS** Wise's request for compassionate

release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Court reduces Wise's sentence to

time served.  Wise's term of supervised release remains at three years, and he is otherwise

subject to the terms of the latest judgment.[52]

Furthermore, the Court orders the Bureau of Prisons to take measures, including a

14-day pre-transfer quarantine and testing, to ensure that Wise is free of COVID-19 prior to

his release.

IT IS SO ORDERED.

Dated:  June 25, 2020                                    s/        *James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE

---

[52] *See* Doc. 73.